IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KERRY SMITH, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>MHI INJECTION MOLDING )<br>MACHINERY, INC., et al., )<br>)<br>Defendants. ) | No. 10 C 8276 |

MEMORANDUM OPINION AND ORDER

Although this action has been pending for 2-3/4 years, with the litigants having engaged in a good deal of substantive activity during that time, in terms of pleading a fresh start was occasioned by counsel for plaintiffs Kerry Smith ("Smith") and his wife Cheryl having fashioned and filed a Fourth Amended Complaint (simply "Complaint" for convenience)[1] against remaining defendants Casini Warehousing Corporation ("Casini") and MHI Injection Molding Machinery, Inc. and Mitsubishi Heavy Industries America, Inc. (the latter two defendants being referred to collectively as "Mitsubishi," again for convenience). Though it might seem anomalous for a pleading to be attacked in Fed. R. Civ. P. ("Rule") 12(b)(6) terms when the case is approaching its third anniversary, those remaining defendants' respective motions to dismiss the Complaint on that basis is entirely appropriate as a purely procedural matter.

---

[1] This opinion's parenthetical references to provisions of the Complaint will simply take the form "(¶--)."

That said, the familiar Rule 12(b)(6) principles apply, with the Complaint's allegations being accepted as true, together with reasonable inferences in plaintiffs' favor. And for that purpose, the previously-long-standing generous reading called for by Conley v. Gibson has been superseded by the "plausibility" requirement prescribed by the Twombly-Iqbal canon. What follows then is a brief factual overview of plaintiffs' claim.[2]

Factual Background

For a number of years to and including the time that Smith's claim arose, Casini leased and operated a warehouse in Bensenville, Illinois where it in turn leased warehouse space and provided warehousing services to other parties (¶7). More than a decade ago Casini entered into such a "Storage and Service Agreement" (the "Agreement") under which it leased storage space to Mitsubishi, with Mitsubishi paying Casini for its providing the "loading and unloading of machinery" (¶9).

In about December 2009 Mitsubishi entered into a contract to sell an injection molding machine, which was then in storage at the Casini warehouse, to a purchaser in Michigan (¶¶13-14). Smith was assigned by his employer (a company independent of Mitsubishi's customer) to pick up, for delivery to that customer,

---

[2] Smith's wife advances only a loss of consortium claim in Complaint Count Three. Because that rises or falls with Smith's claims of negligence (Count One) and willful and wanton misconduct (Count Two), nothing more needs to be (or will be) said here about her place in the litigation.

one large component of the injection molding machine (¶16).³ To characterize the machine as "large" is a major understatement--it weighed nearly 15 tons and was 20 feet long, more than 8 feet wide and more than 8 feet high at its tallest point (id.). That being the case, Smith's tractor-trailer was also large-dimensioned: It was about 48 feet long and 102 inches wide, with a surface on which the machine was to be placed some 3 to 3-1/2 feet high (¶17).

When Smith arrived at the Casini warehouse, he followed the directions he was given there to place the tractor-trailer for loading purposes (¶18). Then Casini's people, in partial compliance with its obligations under the Agreement, lifted the machine and placed it on the trailer (using an overhead crane for that purpose)(¶19). While Smith began to use chains to secure the machine to the trailer, the same overhead crane was used to drape a thin plastic sheet over the machine as directed by Mitsubishi (¶¶20-22).

But that did not complete the loading process, because a tarp had to be placed over the plastic draping for several reasons identified by the Complaint. For one thing, absent a tarp covering, the valuable machine (worth hundreds of thousands

---

³ Though the piece of the machine to be picked up and delivered by Smith was known as the "injection" portion of the injection molding machine, it will be referred to here simply as the "machine" (again a convenient shorthand reference).

3

of dollars) would be at risk of rust and damage (¶25). For another, without the tarp the unsecured plastic sheeting would also render transportation via truck dangerous (¶26). And perhaps most important, Mitsubishi itself required tarping of the load: In late 2009 and early 2010 Mitsubishi's bills of lading always contained a directive that "LOAD MUST BE FULLY TARPED" or "MACHINE AND PARTS MUST BE FULLY TARPED" (¶27).

On the December 16, 2009 date of the pickup at issue here, Smith's truck was equipped with a folded and rolled canvas tarp that when unrolled and unfolded measured some 20 feet by 30 feet and weighed about 200 to 250 pounds (¶28). Understandably Smith requested of the Casini and Mitsubishi personnel that the loading procedure be completed by using the same overhead crane to drape the tarp over the machine (¶¶29 and 31).[4]

Casini's policy was that no one other than its agents and agents of its lessees such as Mitsubishi were permitted to operate the cranes at the Casini warehouse (¶34). When Smith's requests that the loading crew (who were agents of Casini or Mitsubishi or both) use the crane were denied, with no assistance

---

[4] Complaint ¶¶30 and 32 allege that Smith's requested use of the crane for draping a tarp as part of the process of loading such large and heavy machinery onto truck trailers was "the routine custom and practice" not only in warehouses generally but also, more specifically, at the Casini warehouse. Both defendants challenge such allegations in <u>evidentiary</u> terms, a type of challenge directly at odds with Rule 12(b)(6) principles. That issue may be left aside for now, however, for this Court's analysis of the two motions need not address that subject.

thus being provided him for draping the tarp, Smith was forced to attempt to fend for himself (¶¶35-37).[5]

When that other driver referred to in n.5 confirmed that his own load (with its tarp properly secured) was ready to go, he walked back into the warehouse to talk to Smith (¶¶42-43). And when Smith told him that the loading crew had denied his request for the same tarp-draping assistance, the other driver offered to help Smith with the tarping process, for which purpose they climbed up onto the trailer (¶¶45-46). Smith (who is almost 6 feet tall) stood on a raised portion of the trailer, but the top of the machine was still higher than his head (¶47).

With the two men maneuvering the rolled tarp onto the top of the machine, each stood on a part of the machine--on top of the plastic sheeting--in the course of unrolling the tarp along the machine's length (¶48). Both men were unaware that the plastic sheeting or the machine surface or both were oily and slick (¶50), while in contrast the Casini and Mitsubishi personnel <u>were</u> aware of that situation (¶52).

It was plainly foreseeable to the Casini and Mitsubishi

---

[5] Here again Smith alleges that the routine "custom and practice" both in the industry and at the Casini warehouse was for such assistance to be provided by the loading crew (¶38). Indeed, earlier on the same day that same loading crew had placed a similarly large portion of an injection molding machine onto the trailer of another driver for Smith's employer (¶39), and the loading crew (including agents of both Casini and Mitsubishi) had in fact completed their loading responsibility by using the crane to drape the tarp over that load (¶¶39-40).

5

personnel, in light of their refusal to employ the crane in draping the tarp over the machine coupled with the established need for tarping, that Smith had no reasonable option other than to climb onto the machine in an attempt to accomplish the task (which, again, could readily have been done through the use of the overhead crane)(¶53). Unsurprisingly Smith slipped, lost his footing and fell to the concrete floor below, "sustaining serious and permanent injuries" (¶54).

## Rule 12(b)(6) Analysis

It is in that factual context that the two Rule 12(b)(6) motions must be evaluated. And on that score it reflects no credit on the legal profession to have to employ the unfortunately common and sardonic locution "that's the kind of argument that only a lawyer would make." Regrettably that is a fair characterization of the most critical of the contentions advanced by each movant--that the Complaint's Count One negligence claim must fail because neither defendant owed Smith a legal duty, whether at common law or contractual or statutory in nature.

In candor, such a myopic (or perhaps astigmatic) perspective is unsupportable (a subject that will be dealt with a bit later in this opinion). But before that issue is addressed, a few fundamental background matters should be covered. First of course is that this action sounds in diversity, so that Illinois

6

substantive law provides the rules of decision (but not the pleading requirements, which follow the federal pattern of notice pleading rather than the Illinois state practice of fact pleading).[6] And for that purpose all three disputants are on the same page, agreeing (although they cite differing caselaw for the proposition) that the proper judicial inquiry as to the existence of a duty under Illinois law is that reconfirmed by the Illinois Supreme Court in Krywin v. CTA, 238 Ill.2d 215, 226, 938 N.E.2d 440, 447 (2010)(citations omitted):

> Whether a duty exists is a question of law for the court to decide. The standard of review on questions of law is de novo. The touchstone of the duty analysis is to ask whether the plaintiff and defendant stood in such a relationship to one another that the law imposes on the defendant an obligation of reasonable conduct for the benefit of the plaintiff. The inquiry involves four factors: (1) the reasonable foreseeability of the injury; (2) the likelihood of the injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing the burden on the defendant. Questions regarding a breach of a duty and proximate cause of the injury are reserved for the

---

[6] In that respect Smith's Mem. 2 aptly cites and quotes from Christensen v. County of Boone, 483 F.3d 454, 466 (7th Cir. 2007)(per curiam):

> This means, in particular, that when federal courts entertain claims under state law—whether under the diversity jurisdiction of 28 U.S.C. §1332 or, as here, the supplemental jurisdiction of 28 U.S.C. §1367—it is not necessary to plead facts matching elements of legal theories.

And for a first-rate exposition of the difference between the operative federal concept of a claim for relief as contrasted with the state law cause-of-action concept, see NAACP v. Am. Family Mut. Ins. Co., 978 F.2d 287, 291-93 (7th Cir. 1992).

trier of fact.

No time at all need be spent on the first factor of reasonable foreseeability. On the Complaint's allegations as outlined in this opinion, the serious consequence suffered by Smith in attempting the task that he was forced to undertake because of the absence of assistance that should readily have been made available to him might be said to come closer to inevitability rather than mere foreseeability.

That is equally true of the second factor of likelihood of injury. Given the plain foreseeability of the potential risk (and its consequences) thrust on Smith by defendants' flat-out refusal to employ the crane in completing the loading process, his injury from the resultant slip and fall was inevitable (rather than merely foreseeable) as well.

In terms of the other two factors, this Court's difficulties with defendants' arguments have already been forecast by this opinion's pejorative characterization made a bit earlier. Casini's obligation under the Agreement, for which it was expressly paid by Mitsubishi, was to provide "loading and unloading of machinery." Even apart from the express tarping directive emanating from Mitsubishi itself, the inherent requirements of the particular loading involved here cannot reasonably be viewed as having been satisfied by simply placing the machine on Smith's trailer and leaving it at that. Such a

8

distorted bobtailing of the "loading" obligation is totally at war with the Complaint's allegations, and the express Mitsubishi directive that the load be tarped simply underscores the real-world and realistic concept that each of Casini and Mitsubishi owed Smith a duty to provide "loading" of the machine in the total sense of that term.

    Counsel for both Casini and Mitsubishi have deliberately closed their eyes (and their minds) to the clear meaning and purpose of the "loading" obligation undertaken by Casini under the two-party Agreement.  By definition the "loading" of machinery at a warehouse is for the purpose of transporting that machinery to another location, and any fair reading of that obligation entails placing the machinery to be transported (here an extremely large portion of the injection molding machine) in a condition in which the means for that transportation--here Smith's tractor-trailer--can carry out *its* responsibility.  In a real sense, then, if a legal rubric (rather than just plain common sense) had to be supplied here, a transporter such as Smith--even though not expressly named in the Agreement--can fairly be characterized as a clearly intended third-party beneficiary of the contractual obligation of "loading" called for by Mitsubishi and undertaken by Casini in the Agreement.

    In that light it is important to keep in mind the fundamental principle that underlies the third and fourth

9

elements set out in Krywin--a principle succinctly set out in Simpkins v. CSX Corp., 401 Ill.App.3d 1109, 1114, 929 N.E.2d 1257, 1262 (5th Dist. 2010)(citations omitted):

> Our determination of duty is informed by public policy considerations. As a matter of public policy, it is best to place the duty to protect against a harm on the party best able to prevent it.

On that score defendants' makework arguments, essentially a kind of slippery slope approach, border on the farcical.

Remember that this case has nothing whatever to do with requiring either defendant to hire additional personnel or to acquire additional facilities: Here the loading crew was already in place, as was the overhead crane used in the loading process, and only Casini and Mitsubishi could authorize the use of that crane. Instead the issue is whether they could arbitrarily refuse Smith's request to have their existing crew use that existing equipment to assist in completing an essential component of the loading process in partial discharge of Casini's "loading" obligation--a component that Smith himself could not safely undertake.

This opinion deals only with the facts before this Court and with the size and placement of the burden called for on those facts. And in those terms defendants' attempted attack on Complaint Count One fails.

With that count thus saved from defeat, this Court turns briefly to Count Two, which relies on the same factual

allegations to support a characterization of both defendants as having engaged in willful and wanton misconduct. On that score Casini argues for dismissal "because the facts alleged do not rise to the level of willful and wanton conduct," while Mitsubishi urges the same asserted factual deficiency plus the contention that "Illinois does not recognize an independent cause of action for willful and wanton conduct."

As for defendants' shared argument about insufficient factual allegations, it once again mistakenly calls for fact pleading rather than the federal concept of notice pleading. And though this Court of course makes no factual determinations rather than testing the sufficiency of the pleading, it is certainly conceivable that a jury could regard the callousness attributable to the on-site Casini and Mitsubishi personnel as falling within the "willful and wanton misconduct" description.

Lastly, the Mitsubishi effort to dismiss because "Illinois does not recognize an independent cause of action for willful and wanton conduct" raises a red herring--again see the earlier-cited opinion in the NAACP case. It is quite true that Smith's contention might not pass muster as a separate "claim for relief" (as contrasted with a "theory of relief"), but once again the ultimate decision on that score is for the factfinding jury and not for this Court as a threshold matter.

<u>Conclusion</u>

For the reasons stated in this opinion, both motions to dismiss the Complaint (Dkt. Nos. 187 and 193) are denied. Because this matter has previously been set for a September 24, 2013 status hearing, the date on which both Casini and Mitsubishi are ordered to answer the Complaint will be set at that time.

_____
Milton I. Shadur
Senior United States District Judge

Date: September 23, 2013