IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **KERRY SMITH** and **CHERYL SMITH**, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| **MHI INJECTION MOLDING** | ) |
| **MACHINERY, INC.**, et al., | ) |
| | ) |
| Defendants. | ) Case No. 10 C 8276 |
| _____ | ) |
| | ) |
| **MITSUBISHI HEAVY INDUSTRIES** | ) |
| **AMERICA, INC.**, et al., | ) |
| | ) |
| Third-Party Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| **TRANSNAV TECHNOLOGIES, INC.** | ) |
| and **SYCAMORE SPECIALIZED** | ) |
| **CARRIERS, INC.**, | ) |
| | ) |
| Third-Party Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Third-party defendant Sycamore Specialized Carriers, Inc. ("Sycamore") seeks summary judgment under Fed. R. Civ. P. ("Rule") 56 on the contribution claims against it filed by third-party plaintiffs Casini Warehousing Corporation ("Casini"), Mitsubishi Heavy Industries America, Inc. ("Mitsubishi") and MHI Injection Molding Machinery, Inc. ("MHI"). Sycamore's motion is based solely on its argument that it had no duty to plaintiff Kerry Smith ("Smith") to prevent the injuries he sustained (S. Mem. 2, 3 n.2).[1]

_____
[1] Abbreviations "S." for "Sycamore," "C." for "Casini" and "M." for Mitsubishi and MHI collectively are used throughout this opinion. Mitsubishi's and MHI's First Amended
(continued)

As this memorandum opinion and order explains, by ordering Smith to load and tarp such massive equipment as the nearly 15-ton machine at issue in this case, Sycamore undoubtedly undertook a duty to provide reasonable training and equipment to enable Smith to carry out that duty safely. Although that reason -- and others outlined below -- require the rejection of Sycamore's motion as a matter of law, it should be understood that such denial does not necessarily spell success for its adversaries' claims for contribution.

## **Summary Judgment Standard**

All parties agree that the substantive law governing the case is that of Illinois. But because summary judgment standards are procedural in nature, this Court follows federal procedure even in diversity cases. Casini's references to the Illinois state summary judgment standards (see C. Mem. 6-7) are of course wholly inapposite and will be ignored.

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (<u>Lesch v. Crown Cork & Seal Co.</u>, 282 F. 3d 467, 471 (7th Cir. 2002)). Courts "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts" in resolving motions for summary judgment (<u>Payne v.
_____
(footnote continued)

Third-Party Complaint is cited "M. Am. Compl. ¶ --," and Casini's Third-Party Complaint is cited "C. Compl. ¶ --." Sycamore's Answer to Casini's Third-Party Complaint is cited "S. Ans. C. Compl. ¶ --." All parties' exhibits are cited "Ex.," and their memoranda are cited "Mem." Sycamore's memorandum in reply is cited "R. Mem." This opinion cites Sycamore's LR 56.1(a)(3) statement as "S. St. ¶ --," Casini's corresponding statement of additional facts as "C. St. ¶ --" and Mitsubishi's and MHI's statement of additional facts as "M. St. ¶ --." All responses to statements of fact take the form "x R. y St. ¶ --," with "x" denoting the author of the response and "y" denoting the party to whose statement "x" has responded.

Pauley, 337 F. 3d 767, 770 (7th Cir. 2003)).

But a nonmovant must produce more than "a mere scintilla of evidence" to support the position that a genuine issue of material fact exists and "must come forward with specific facts demonstrating that there is a genuine issue for trial" (Wheeler v. Lawson, 539 F. 3d 629, 634 (7th Cir. 2008)). Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

**Factual Background**

Smith's claims against Casini, Mitsubishi and MHI arose from his fall that occurred on December 16, 2009 in a warehouse that Casini operated in Bensenville, Illinois (M. Am. Compl. ¶¶ 1-3). Smith was a truck driver employed by Sycamore and was at the warehouse to transport an injection molding machine ("Machine") (S. St. ¶ 37).

Both the weight and size of the Machine made its loading for transport a major task -- it weighed some 14-1/2 tons and was 20 feet long, more than 8 feet wide and more than 7 feet tall (M. R. S. St. ¶ 36). It had to be lowered via crane onto the trailer of the truck owned and operated by Sycamore (S. St. ¶ 39). According to the bill of lading, before transport the Machine also had to be covered with a tarp (S. St. Ex. D). Smith contends that he asked the crane operator to employ the crane facility to assist in draping the 250-pound tarp over the Machine and that his request was denied (S. St. ¶ 45).[2] In turn, Casini's crane operator (now the company's president) denies that Smith ever asked for such use of the crane (M. R. S. St. ¶ 45).

In any event, Sycamore had not called ahead to ask whether Smith would be able to use

---

[2] Casini offers opinion testimony suggesting that the tarp weighed merely (!) 80 pounds (C. Supp. R. ¶ 3). In any case that dispute is not material to the issue of Sycamore's duty.

- 3 -

the crane to tarp the load after the crane operator had loaded it onto the trailer (M. St. ¶ 13).[3] Nor did Smith call Sycamore for assistance or to explain the situation (S. St. ¶ 48). Instead Smith climbed atop the Machine and began to unroll the tarp (S. St. ¶¶ 50, 51). In the course of doing so, Smith fell from the slick Machine and sustained injuries (S. St. ¶¶ 56–57).

Smith had worked for Sycamore as a truck driver since 2003 (S. St. ¶ 10). He had been trained in tarping loads by senior drivers both at Sycamore and at the trucking company for which he had worked previously (S. St. ¶¶ 16–17). He had regularly transported heavy equipment similar to the Machine in the past (S. St. ¶¶ 11–13). Although Smith said at his deposition that he had never fallen off of a trailer before this incident (C. Mem. ¶ II.A.2), Casini has offered evidence that he had fallen off a trailer in 2004 (C. Mem. ¶ II.A.3).

Sycamore specifically prohibited drivers from tempting fate by standing on their loads (S. St. ¶ 20), and drivers faced disciplinary measures if they violated that policy (S. St. ¶ 22). Instead loads were to be tarped with the aid of a crane, forklift or manlift (S. St. ¶ 25). If drivers had difficulty tarping a load or felt that it was dangerous to do so, they were instructed to call Sycamore for assistance (S. St. ¶ 23). Sycamore did not provide Smith with fall arrest equipment, a ladder, sliding or rolling tarps or a trailer with soft or curtain sides (C. Mem. ¶ II.A.6).

With Smith's Fourth Amended Complaint having named Casini, Mitsubishi and MHI as defendants, each of them brought a claim for contribution against Sycamore under the Illinois

---

[3] In light of the Sycamore training of its drivers described in the next paragraph of the text, nothing supports the notion that Sycamore was delinquent in not having anticipated that question.

Joint Tortfeasors Contribution Act (740 ILCS 100/1 to 100/5).[4] They allege that Sycamore owes them contribution (in the event of an adverse judgment against them) because any injury suffered by Smith was at least in part proximately caused by Sycamore's having breached a duty "to ensure that Kerry Smith had the knowledge, experience, equipment and assistance to secure and cover the machine for transportation by means which would not result in injury to Kerry Smith" (M. Am. Compl. ¶ 29).

### **Sycamore's Duty of Reasonable Care**

All the parties look to Illinois substantive law in this diversity-based action, and this opinion will do likewise. On that score Act § 2(a) specifies that Casini, Mitsubishi and MHI may prevail in their claims for contribution against Sycamore only if Sycamore is liable to Smith for his injury.

While the parties dispute a number of facts, the issues to which those disputed facts pertain are breach and proximate cause rather than duty. Because Sycamore explicitly restricts its motion to the question of duty, the existence of disputed facts on such other issues does not suffice to resolve this motion.

To find the existence of a duty, this opinion must first determine whether Sycamore, by its act or omission, contributed to a risk of harm to Smith (see Simpkins v. CSX Transp., Inc., 2012 IL 110662 ¶ 21, 965 N.E.2d 1092, 1098 (Ill. 2012)). If that preliminary inquiry gets a "yes" answer, this Court must look to the four policy considerations that Simpkins, 2012 IL 110662 ¶ 21, 965 N.E.2d at 1098 directs Illinois courts to use in determining whether a duty ran

---

[4] Citations to that statute will take the form "Act § --," omitting the prefatory "740 ILCS 100/."

from a defendant to a plaintiff:

> (1) the reasonable foreseeability of the injury; (2) the likelihood of the injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing the burden on the defendant.[5]

Threshold Question

Sycamore argues that the preliminary question whether its act or omission contributed to a risk of harm to Smith should be answered in the negative. On that score Sycamore claims it owed Smith no duty because it did not itself create the situation in which there was a foreseeable risk of injury (S. R. Mem. 2). As Sycamore would have it, the hazard arose and Smith's injury was sustained because he was denied assistance in tarping his load at the warehouse -- and not because he followed Sycamore's training or used the equipment it provided or was improperly supervised.

All of that means, Sycamore contends, that the duties of training, equipping and supervision that Casini, Mitsubishi and MHI would impose on it are irrelevant. And that being so, Sycamore concludes that the inquiry need not extend to an examination of the four policy factors.

That however misses the full thrust of the necessary inquiry; which hinges on what Sycamore did or did not do that arguably affected the risk of harm to Smith. In that respect its

---

[5] [Footnote by this Court] Sycamore might also have owed an affirmative duty to Smith if there were a legally recognized "special relationship" between them that automatically gave rise to such a duty (Simpkins, 2012 IL 110662 ¶ 20, 965 N.E.2d at 1097-98). But Illinois does not recognize the employer-employee relationship as one of those special relationships (MacDonald v. Hinton, 361 Ill. App. 3d 378, 382, 836 N.E.2d 893, 898 (1st Dist. 2005)). Any duty owed by Sycamore must therefore have come into being via Sycamore's act or omission and the just-quoted four-factor policy analysis. Casini appears to misunderstand this point, arguing that Sycamore should not have an exemption from its duty (C. Mem. 8, 9-11) -- an argument that would come into play only if Sycamore did in fact have one of the legally defined "special relationships" with Smith. Because that is not the case, Casini's argument is irrelevant.

having sent him to pick up the Machine at all is not of course to be counted -- it is simply a "but for" factor that cannot serve the function of legal causation. As for the earlier-described things that Sycamore did or did not do that may have borne on the risk that eventuated in Smith's injury:

1. It provided him with training in tarping loads, supplementing his training at an earlier job. Although the predicate for doing so is really thin,[6] out of an abundance of caution this Court will assume for purposes of this motion that a factual issue is posed as to whether Sycamore's training should have been more extensive.

2. It has expressly prohibited its drivers (including Smith) from standing on their loads, with discipline facing them if they violated that prohibition. Smith's having done just that in spite of that prohibition surely does not attach potential liability to Sycamore.

3. It has directed its drivers (again including Smith) to call it for assistance in case of (a) difficulty in tarping or (b) a sense of danger in doing so. Smith did not follow that directive, and once again to ascribe fault to Sycamore

---

[6] Casini's Mem. 2 refers to Smith's deposition testimony in which he said (Smith Dep. 26:20 to 26:22):

> Well, the training period at Sycamore is kind of short and there's a lot of work to do so you just go out and you get it done.

But that is really cherry-picking, because Smith then went on to describe the meaningful specifics of the training, including on-the-job training. Moreover, Sycamore can scarcely be held to have violated reasonable care principles when it has taken into account the prior training and experience a newly-hired driver has brought with him to the job -- especially when it has imposed the strict and express restrictions described in the next two paragraphs of the text.

would impermissibly convert it into a guarantor of Smith's compliance with the proper training that Sycamore had provided.

4. That leaves only defendants' complaint as to Sycamore's not having supplied Smith with fall arrest equipment, a ladder, sliding or rolling tarps or a trailer with soft or curtain sides. And in those respects the record does not suffice to determine the fact-intensive question whether the nonprovision of such items or any of them amounts to an absence of due care on Sycamore's part. Indeed, it must be noted that to the extent that the provision of any such items could be called for to lessen or avoid the risk of injury if Smith violated Sycamore's above-stated prohibition and directives, MHI and Mitsubishi Mem. 6 has expressly conceded (emphasis added):

> Sycamore's argument that it had no reason to anticipate that Plaintiff would ignore his training and violate company policy is <u>reasonable</u>.

So for present purposes Sycamore's effort to cut off at the pass any examination of the <u>Simpkins</u>-provided four factor analysis will be rejected -- but that rejection does not constitute a finding either way as to the last-mentioned possible shortfall on Sycamore's part.

That then provides the backdrop against which the application of the four factor <u>Simpkins</u> test must be evaluated. This opinion turns to that task.

As for the first factor, the foreseeability of the injury, if Sycamore is found to have fallen short in either or both of the first and fourth just-discussed responsibilities or possible responsibilities -- as this Court must assume arguendo to have been possible for the reasons already stated -- there is no question that injury to Smith could foreseeably have been the

- 8 -

consequence. And as for the second factor, the likelihood of such injury, that is really a given once the foreseeability element has been established.

To turn to the third factor, the magnitude of the burden of guarding against the injury, it would surely not be oppressive if Sycamore were required to provide some additional training to cure its hypothesized first potential deficiency. That is also true of Sycamore's fourth alleged shortcoming, because any obligation on its part that might remain after putting aside safety precautions that would be called for only on the dubious premise that Sycamore had some obligation to assume that Smith might ignore his training and climb atop the Machine -- especially in light of the heightened training requirement -- would not appear to present an excessive burden. With those determinations having been made that neither the first nor fourth of Sycamore's hypothesized responsibilities discussed above would post any great burden under <u>Simpkins</u>' third factor, it follows that the consequences of imposing such a burden under the fourth factor are slight.

In sum, with any factual inferences having been drawn in favor of the contribution claimants (although it bears repeating once again that it appears to require a real stretch to characterize some of those as "reasonable," as Rule 56 requires), the existence of disputed facts compels the denial of Sycamore's motion. Hence resolution of the question of contribution must await the trial of the case.

## **Conclusion**

As might well have been (and perhaps should have been) anticipated when the current motion by Sycamore was first launched, summary judgment on the contribution claims filed against it here has proved a singularly inapt vehicle for narrowing the issues in this action. As stated more than once during the course of this opinion, Sycamore's motion has not only failed to

establish its right to a judgment as a matter of law on the contribution claims but, on the other side of the coin, has also failed to limn a path for the contribution claimants' success on those claims. For the present, however, the only required action by this Court is the denial of Sycamore's motion, and it so orders.

                                                       _____
                                                       Milton I. Shadur
                                                       Senior United States District Judge

Date: February 20, 2014