# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **KERRY SMITH** and **CHERYL SMITH**, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. 10 C 8276 |
| **MHI INJECTION MOLDING MACHINERY, INC.**, et al., | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Kerry Smith ("Smith") and his wife Cheryl[1] seek a ruling pursuant to Fed. R. Civ. P. ("Rule") 16 that (1) as a matter of law defendants Casini Warehousing Corporation ("Casini"), Mitsubishi Heavy Industries America, Inc. ("Mitsubishi") and MHI Injection Molding Machinery, Inc. ("MHI") owed a duty of care to Smith and (2) that duty included assisting him in draping a tarp over the section of a plastic injection molding machine ("Machine") that he was to transport. As explained in this opinion, there are genuine disputes of fact material to those issues that Smith seeks to resolve. Hence this Court denies Smith's motion to narrow the issues.

### Rule 16 Issue-Narrowing Standard

Resolution of issues as a matter of law, although neither expressly provided for under Rule 16 nor a subject for a motion for partial summary judgment under Rule 56, can be a useful

---
[1] Cheryl Smith's claim is for loss of consortium resulting from the injuries her husband allegedly suffered. As her claim is dependent upon his, this opinion will avoid the necessity of distinguishing between "the Smiths" as plaintiff and "Smith" as an injured party by speaking only of Kerry Smith's claims.

adjunct facilitating the disposition of a case. And if such an undertaking is initiated, it is useful to apply the familiar Rule 56 principles to frame the legal analysis.

Those principles impose on the movant the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (Lesch v. Crown Cork & Seal Co., 282 F. 3d 467, 471 (7th Cir. 2002)). Courts "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts" in resolving motions for summary judgment (Payne v. Pauley, 337 F. 3d 767, 770 (7th Cir. 2003)). But a nonmovant must produce more than "a mere scintilla of evidence" to support the position that a genuine issue of material fact exists, and "must come forward with specific facts demonstrating that there is a genuine issue for trial" (Wheeler v. Lawson, 539 F. 3d 629, 634 (7th Cir. 2008)). Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

**Factual Background**

On December 16, 2009 Smith arrived at a warehouse operated by Casini in Bensenville, Illinois, to transport the Machine on his truck (S. St. ¶¶ 5,12).[2] MHI had leased space in the

---

[2] Abbreviations "S." for "Smith," "C." for "Casini" and "M." for "MHI" and "Mitsubishi" collectively are used throughout this opinion. Smith's Fourth Amended Complaint is referred to simply as the "Complaint" and is cited "Compl. ¶ --." All parties' exhibits are cited "Ex." and their memoranda are cited "Mem." Because all parties have complied with LR 56.1 in submitting statements of what they declare are uncontested facts, this opinion cites Smith's LR 56.1(a)(3) statement "S. St. ¶ --," Casini's corresponding statement of additional facts "C. St. ¶ - " and the MHI and Mitsubishi statement of additional facts "M. St. ¶ --." All responses to statements of fact take the form "x R. y St. ¶ --," with "x" denoting the author of the response and "y" denoting the party to whose statement "x" has responded.

warehouse from Casini to store -- and to serve as the shipment point for -- injection molding machinery (S. St. Ex. D), and that lease had been assigned to Mitsubishi when it absorbed[3] MHI some months earlier (S. St. ¶ 8). Under that Service and Storage Agreement ("Agreement") Casini was to provide "loading and unloading of machinery" stored at its warehouse (S. St. ¶ 6). Because the Machine had been sold by MHI with the shipping term "FOB BENSENVILLE, IL," the buyer of the Machine[4] had (through a broker) hired Smith's employer to provide transportation (M. St. ¶¶ 2-5, 9-10).

After Smith arrived at the warehouse Casini's staff lowered the very large Machine -- which weighed some 29,000 pounds (S. St. ¶ 12) and was more than 20 feet long, about 8 feet wide and at least 7 feet high at its tallest point (S. St. ¶ 12; M. R. S. St. ¶ 31) -- onto Smith's truck, using an overhead crane (S. St. ¶ 16). After the Machine had been lowered onto the trailer Smith went to work securing it with chains (S. St. ¶ 17). Smith avers that workers then draped a plastic sheet over the Machine utilizing the overhead crane (S. St. Ex. G 54–62), although MHI's parts and warehouse manager (who did not actually see the events unfold) contends that the sheet should already have been in place before loading (S. St. Ex. F 55-56, 60-62). Regardless of how it got there, that plastic sheet -- which was apparently slick with some sort of oil (S. St. ¶ 46) and

---

[3] Casini and Smith suggest that MHI became a division of Mitsubishi, as does the assignment of the Agreement (see S. St. ¶ 8; S. St. Ex. P; C. R. S. St. ¶ 8). In turn, MHI and Mitsubishi insist that what occurred in July 2009 was that the latter simply purchased MHI's assets and assumed its obligations under the Agreement, with MHI voting to dissolve the following March (M. R. S. St. ¶ 8; M. St. ¶ 1). That disagreement has no bearing on the present motion. But because the MHI-Mitsubishi insistence that the former did not become a division of the latter implies that the relationship between the two entities might have some bearing on this case, this opinion simply follows the parties in assigning actions and employees to one or the other.

[4] That buyer, Transnav Technologies, Inc., has been dismissed from the lawsuit pursuant to a settlement agreement (Dkt. 177).

had not been secured to the Machine (S. St. ¶ 24) -- was to be covered in turn by a tarp (S. St. ¶ 22).  Smith had brought the tarp with him (S. St. ¶ 26).

As with the dimensions of the Machine, the parties dispute the material from which the tarp was constructed and hence its weight, with Smith saying that it was made of canvas and weighed between 200 and 250 pounds (S. St. ¶ 26), his employer responding in an interrogatory that it was of vinyl and weighed about 100 pounds (M. St. Ex. 8 ¶ 13) and Casini proffering evidence that one of the models of vinyl tarp mentioned by Smith's employer weighs just 80 pounds (C. St. ¶ 25).  Smith further contends that MHI or Mitsubishi required that the Machine be tarped (S. St. ¶¶ 20, 25), which they in turn deny (M. R. S. St. ¶¶ 20, 25).  In support of his contention Smith points to bills of lading issued by MHI in other instances saying that cargo must be tarped (S. St. ¶ 25), while MHI and Mitsubishi counter that MHI did not issue the bill of lading for this particular load and required that cargo be tarped only when it (rather than the buyer, as was the case here) hired the carrier (M. Mem. 11-12; M. R. S. St. ¶ 25).

There is also disagreement over whether warehouse employees customarily aid drivers in tarping loads and whether in particular Casini had used its crane to help two other drivers do so earlier in the day (S. St. ¶¶ 28-29, 35-38; M. St. ¶ 5; M. R. S. St. ¶ 37-38).  Smith suggests that Casini was the shipper because it placed the load on the truck (S. St. ¶ 33), while MHI and Mitsubishi respond that the buyer was the shipper, for it arranged and was responsible for transportation (M. St. ¶ 5).  Conflict abounds regarding the meaning of the term "loading," with Smith arguing that it includes applying the protective tarp (S. Mem. 1, 8, 10) -- an argument that MHI, Mitsubishi and Casini counter with opinion testimony that the loading process ends at the moment that the cargo is detached from the overhead crane (M. St. ¶ 23; C. St. ¶¶ 15-20).

- 4 -

Smith claims that he asked the crane operator to aid him in draping the tarp over the Machine (S. St. ¶ 27). Unsurprisingly, Casini denies that any such request was made (C. R. S. St. ¶ 27). Rather than calling his employer for assistance (as the employer required its drivers to do if tarping a load would be dangerous) (M. St. ¶ 33; M. R. S. St. ¶ 44), Smith, aided by another driver who happened to be at the warehouse picking up a different load, then climbed atop the Machine to unroll the tarp that Smith had brought with him (S. St. ¶¶ 42-43).

Again the parties offer conflicting evidence as to whether that was the safest way to apply the tarp without assistance from the crane operator: Smith contends there was no safer method and cites the testimony of a coworker that a ladder would not have been helpful (S. St. ¶ 44-45). Casini suggests that Smith could have stood on the trailer rather than on the Machine itself, or used a rope or a ladder (C. R. S. St. ¶ 45; C. St. ¶¶ 22-23; see also M. R. S. St. ¶ 44). MHI and Mitsubishi offer evidence that their employees had never seen a driver stand on his or her load to tarp it (M. St. ¶ 37). In the course of unrolling the tarp while atop the Machine, Smith slipped on the plastic sheet and was injured from a fall to the concrete floor below (S. St. ¶ 47).

## **Smith's Contentions and Defendants' Responses**

Smith's memorandum is unhelpful in disclosing the ground upon which his motion should be granted. One deficiency is its failure to differentiate between MHI and Mitsubishi on one hand and Casini on the other. It should be obvious, however, that any argument suggesting that Casini had a duty of care may be inapplicable to MHI and Mitsubishi, and vice versa.

More fundamentally, Smith fails to present much in the way of argument -- as contrasted with bare assertion -- as to why his opponents owed him a duty of care. After 5-1/4 pages under the wildly inaccurate heading "Facts As To Which There Is No Genuine Dispute" (a section better described as what Smith would like to prove than what his adversaries do not contest)

Smith's memorandum contains only 3-1/2 pages of "argument," the bulk of which consists of quotations selected from this Court's earlier denial of the defendants' motions to dismiss (in its "Opinion," 2013 WL 5310174 (N.D. Ill. Sept. 23, 2013)).[5] Smith employs those quotations to assert summarily[6] that each of the four factors of Illinois' common-law duty analysis is satisfied in this case. While Smith acknowledges that this Court's earlier Opinion accepted all of his well-pleaded allegations as true, he attempts to minimize that postural distinction by stating (without elaboration) that what were "then allegations" are "now demonstrated by unrebutted evidence" -- essentially ignoring the facts that the weight of the tarp, the height of the Machine and the ease with which the defendants could have aided Smith remain hotly disputed and that his opponents have since averred that the trade meaning of "loading" does not include "tarping."

MHI, Mitsubishi and Casini provide a more satisfactory framework for addressing Smith's motion, and this opinion largely divides the question as they do. First, did the Agreement make Smith a third-party beneficiary of a contractual duty to tarp the Machine? And absent such a contractual basis, does the common law of Illinois impose a duty of care upon either Casini on one hand or MHI and Mitsubishi on the other?

---

[5] Future citations to the Opinion will reflect the Westlaw starred pagination.

[6] It is particularly troubling that those quotations are so carefully "selected" as to omit this Court's frequent qualifications relating to the procedural posture of the Opinion. Compare Opinion at *3 ("On the Complaint's allegations as outlined in this opinion, the serious consequences suffered by Smith in attempting the task he was forced to undertake because of the absence of assistance that should readily have been made available to him might be said to come closer to inevitability rather than mere foreseeability.") with S. Mem. 9 ("Thus on the first factor -- foreseeability -- the facts shown to be beyond genuine dispute in this motion demonstrate that 'the serious consequences suffered by Smith in attempting the task that he was forced to undertake because of the absence of assistance that should readily have been made available to him might be said to come closer to inevitability than mere foreseeability.'").

As discussed below, that first question must be answered in the negative due to the parties' dispute as to the trade meaning of the term "loading." Nor can a common-law duty be imposed, because the evidence (when viewed in the light most favorable to Smith's opponents) suggests that Smith's injury was neither foreseeable nor likely.

Contractual Duty

As suggested in the earlier Opinion at *4, Casini, Mistubishi and MHI might conceivably owe Smith a duty premised upon the language of the Agreement. Smith seizes on that suggestion and cites the Opinion to the effect that an obligation to "load" the Machine must, <u>given the Complaint's allegations</u>, also include an obligation to tarp it (S. Mem. 9-10).

But MHI, Mitsubishi and Casini have since submitted affidavits by opinion witnesses asserting that "loading" does not include tarping within the custom and usages of the warehousing, trucking and transportation industries (M. St. Ex. 12; C. St. Ex. 3). That evidence is key, because where a charge of negligence relies upon a duty founded on a contract, the extent of that duty is defined by the terms of the contract itself (<u>Kotarba v. Jamrozik</u>, 283 Ill. App. 3d 595, 597, 669 N.E.2d 1185, 1188 (1st Dist. 1996)). And contractual terms are to be "interpreted in accordance with the custom and usage of those particular terms in the trade or industry of the parties" (<u>Intersport, Inc. v. Nat'l Collegiate Athletic Ass'n</u>, 381 Ill. App. 3d 312, 319–20, 885 N.E.2d 532, 539 (1st Dist. 2008)). Those affidavits alone -- raising doubts as to the meaning of "loading" and therefore the scope of Casini's promise to MHI -- therefore create a genuine issue of fact that precludes ruling in Smith's favor as to any contractual duty of assistance.

Moreover, this Court had addressed the plausible meaning of "loading and unloading of machinery" in the Agreement only because it was then plausible that Smith was a "clearly intended third-party beneficiary" of that contract (see Opinion at *4). Smith's quotation of the

Opinion on the meaning of "loading" can therefore bear upon some duty owed to him only if he were in fact a third-party beneficiary of the Agreement. And the record now indicates that neither Casini nor Mitsubishi had anything to do with hiring Smith's employer. Instead Smith's employer was indirectly procured by the buyer (in accordance with the "FOB Bensonville" term of the sales agreement), distancing Smith from the benefit of any contractual obligations arising from the Agreement. Nor does the Agreement mention carriers at all, even in the section where Casini undertakes to provide loading and unloading services.

In that respect it has long been the law in Illinois that a plaintiff who is not a party to a contract may sue under it only if the parties have affirmatively expressed by the terms of the contract itself an intent that the would-be plaintiff is a direct (and not merely incidental) beneficiary of that contract (see, e.g., Carson Pirie Scott & Co. v. Parrett, 346 Ill. 252, 258, 178 N.E. 498, 501 (1931)). As the record now makes clear (in a way that Smith's Complaint did not), Smith was not a third-party beneficiary of the Agreement, under which Casini's and Mitsubishi's manifest concern is with their own commercial transaction. Smith has failed to establish the absence of any material issue of fact as to a contractual duty, and his motion cannot therefore succeed on those grounds.

## Common Law Duty

Even so, there may nonetheless have been a duty owed to Smith under the common law. Casini's insistence that this Court need not reach the question of common law negligence because Casini can possess no duty of care to Smith beyond that generated by the Agreement with Mitsubishi, repeated at three separate points in its memorandum (C. Mem. 9, 17-18, 18), is simply baffling. While there is no general common law duty to protect or rescue a stranger, such a duty may arise "if a course of action creates a foreseeable risk of injury" (Simpkins v. CSX

Transp., Inc., 2012 IL 110662 ¶ 19, 965 N.E.2d 1092, 1097 (Ill. 2012)).[7] In such a case Illinois may impose a duty after weighing four factors (id., 2012 IL 110662 ¶ 21, 965 N.E.2d at 1098):

> (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant.

Importantly, a plaintiff's own actions can affect a court's analysis of any duty owed by the defendant (see Camp, 553 F. 3d at 509-11, 512). Thus if a reasonable person with the plaintiff's knowledge of the situation would have appreciated and avoided a hazard created by the defendant's actions, then from the defendant's perspective the plaintiff's injuries were neither foreseeable nor likely (Camp, 553 F. 3d at 509-11, 512). Moreover, even where a plaintiff was under an economic compulsion to put himself or herself at risk, any resulting injuries were not foreseeable to the defendant if the defendant neither knew nor had reason to know of that compulsion (id. at 509-10). Lastly, if a plaintiff was in the better position to prevent his or her

_____

[7] Even where one has not contributed to the risk of harm to the plaintiff, a duty may still be imposed if there is a recognized "special relationship" between a plaintiff and a defendant -- for example, between the possessor of land who holds it open to the public and a member of the public who enters in response to that invitation (Simpkins, 2012 IL 110662 ¶¶ 20-21, 965 N.E.2d at 1097-98). As to such business invitees Illinois has recognized a duty regarding injuries flowing from the condition of the premises coupled with the actions of third parties and the property owner's failure to exercise reasonable care (Marshall v. Burger King Corp., 222 Ill. 2d 422, 437, 856 N.E.2d 1048, 1058 (2006)). While the count of negligence in the Complaint focused exclusively on premises liability as a source of a duty (Compl. ¶¶ 56-58), Smith does not seem to seek a ruling on that theory of liability in this motion, his memorandum instead focuses exclusively on contractual duties and the four-factor analysis for run-of-the-mill negligence. At the same time, defendants' steadfast reliance on cases that did not find a duty of care based upon premises liability, such as Burse v. CR Industries, Inc., 288 Ill. App. 3d 48, 680 N.E.2d 431 (2d Dist. 1997), and Swearingen v. Momentive Specialty Chem.'s, Inc., 662 F. 3d 969 (7th Cir. 2011), is misplaced: Premises liability is not the only way in which a duty may be generated. Moreover, those cases dealt with the open and obvious hazard doctrine, and no Illinois court has extended that doctrine to cover ordinary negligence claims (see Camp v. TNT Logistics Corp., 553 F. 3d 502, 511 (7th Cir. 2009)).

injuries and the defendant would have had to expend significant resources to safeguard the plaintiff, the last two factors in duty analysis counsel against imposing a duty on the defendant (id. at 511, 512). To reflect the differing positions of Casini and MHI/Mitsubishi, this memorandum opinion will treat those parties separately for purposes of common law duty.

Casini's Duty Under Common Law

As discussed above, any discussion of common law duty must begin by asking whether defendant created a foreseeable risk of injury. Smith does not directly address that threshold question, instead jumping straight into the four-factor analysis. That said, Smith does emphasize that he had to tarp the Machine and that he reasonably expected to be able to use Casini's equipment in doing so (S. Mem. 4-5). Smith presumably believes that Casini's refusal to grant him use of the crane -- which he contends Casini routinely offered to other drivers -- created a foreseeable risk that he would attempt to tarp the Machine himself and thereby face injury.

Of course the bare fact that Casini <u>could</u> have helped Smith does not impose a <u>duty</u> to help, and even the fact that Casini might regularly have aided other drivers does not necessarily mean that it was obligated to assist Smith on this occasion. As <u>Mick v. Kroger Co.</u>, 37 Ill. 2d 148, 151-52, 224 N.E.2d 859, 862 (1967)) makes clear, a regular practice of providing assistance does not impose a legal duty to provide that assistance, unless deviation from that regular practice also exposed the plaintiff to an unreasonable risk of harm. In any event Casini has produced evidence that it did not ordinarily aid other drivers in tarping their loads. Thus this Court cannot conclude that there is no factual dispute over whether Casini exposed Smith to an unreasonable risk of harm by deviating from what is said to be, but there is evidence that it is not, its own regular practice.

Smith also asserts that he had to tarp the Machine, and therefore that he would foreseeably face injury by being forced to continue the tarping process without use of Casini's crane. That "therefore" conclusion might be called for if it were Casini itself that compelled him to apply the protective tarp. But Smith does not assert that Casini so required, instead saying only that <u>MHI</u> required that the Machine be tarped (S. Mem. 4-5). To be sure, Casini did place a load that would have to be tarped onto Smith's trailer – according to Smith, the Machine might have been damaged if not tarped, and the plastic sheet made it dangerous to drive without using a tarp to secure the Machine (S. Mem. 4-5). If Casini knew that Smith was required to tarp the load and could do so safely only by using its crane, Smith might prevail. But MHI, Mitsubishi and Casini all contend that the parties reasonably expected that drivers tarp their own cargo, and on that version of the facts Casini cannot be said to have increased the risk to Smith unreasonably merely by putting him in a position where he would tarp his own cargo.

In short, even before this Court reaches the four-factor duty analysis it is confronted at the outset with genuine disputes of material fact. This opinion reaches the same conclusion when it looks to the four factors.

Smith baldly asserts that his injury was foreseeable and likely -- without, as already noted, advancing any argument to that effect other than to say that his allegations "are now demonstrated by unrebutted evidence" (S. Mem. 9). That statement ignores Casini's assertion that its role in the loading process ordinarily ended when the cargo was detached from its crane. On Casini's evidence it would have been entirely reasonable for it to assume that Smith could finish preparing the Machine for transport without its assistance, so that Smith's injury would not be the foreseeable and likely result of its failure to provide such assistance. Smith's argument is further undercut by Casini's evidence that the tarp was not nearly as heavy as Smith says it was,

further reducing the foreseeability and likelihood of injury from attempting to tarp the Machine without use of an overhead crane.

As for the magnitude of any burden that a duty to aid would impose and the consequences of placing such a burden on Casini (the third and fourth factors), Smith claims that Casini was in the better position to complete the task of tarping the Machine safely and easily, for it had use of the overhead crane (S. Mem. 10-11) -- but Casini responds that Smith never asked to use the overhead crane (C. R. S. St. ¶ 27). It is one thing to say that Casini could have complied with a reasonable request for aid with nothing more than "the push of a button" (S. Mem. 11), but it is quite another to say that it would not be burdensome to require that Casini keep watch for when its aid might be required and to volunteer it unbidden. Moreover, Casini presents evidence that the magnitude of the burden that Smith would impose on it is actually significant and that its personnel would have to sit idly for up to an hour if it had a duty to use its crane to help every driver in its facility (C. Mem. 17; C. St. ¶ 19).

When the evidence is viewed in the light most favorable to the non-movants, as is required on the current motion, this case bears a remarkable -- and dispositive -- resemblance to the earlier cited <u>Camp</u> decision by our Court of Appeals. There Camp, a delivery driver, was transporting several heavy pallets that she knew to be stacked precariously within her tractor-trailer. Nonetheless she chose to open the trailer door without taking safety precautions and was consequently injured by a falling pallet. Because a "reasonable person with Camp's knowledge would have appreciated and avoided the danger," she failed the four-factor test (<u>id.</u> at 512): In essence, the <u>Camp</u> defendants could not reasonably have foreseen that Camp would take such an unwise risk.

Here too defendants have presented substantial evidence (which must be credited in the current procedural posture) that Smith's decision to climb aboard the Machine was so unreasonable as to be unforeseeable. That evidence includes testimony that drivers do not typically tarp cargo by climbing on top of it (M. St. ¶ 37) and that there were safer means at Smith's disposal of applying the tarp that would render the plastic sheet's slipperiness irrelevant (see M. R. S. St. ¶ 44; C. R. S. St. ¶ 45; C. St. ¶¶ 22-23). If Casini ultimately proves that Smith both knew of the danger in climbing atop the Machine and had significantly safer methods at his disposal, his decision to nonetheless proceed as he did might qualify as so foolhardy as to be both unforeseeable and unlikely under Camp.

In sum, this Court would have to decide more than one issue of contested fact to apply the four-factor analysis to this case. Hence it cannot be found as a matter of law that Casini owed Smith a duty of care.

MHI and Mitsubishi's Duty Under Common Law

Smith provides almost no argument at all as to why MHI and Mitsubishi owed him a duty of care at common law, beyond the facts that (a) their personnel were on the premises and (b) they sold the Machine (cf. S. Mem. 8). They are not otherwise mentioned in the argument section of Smith's memorandum (except for a quotation from the Opinion dealing with contractual obligations (S. Mem. 10)), unless it is obliquely in his reference to "parties capable of operating a crane" (S. Mem. 11). In Smith's version of the facts, though, he asserts that Mitsubishi and MHI required that the slippery plastic sheet be put on the Machine and that they required that the Machine be tarped prior to transport (S. Mem. 4).

That slender reed is inadequate to support an argument that MHI or Mitsubishi increased Smith's risk of injury, let alone that the four factors have been satisfied. Clearly the mere sale of

the Machine to a buyer who then arranged (through a broker) for Smith to transport it does not increase Smith's foreseeable risk of injury for purposes of the threshold inquiry. But even if it did, MHI and Mitsubishi strongly deny that they (or Casini) required Smith to tarp the Machine (M. R. S. ¶23).[8] That factual dispute by itself prevents this Court from finding in Smith's favor as a matter of law.

Moreover, even if Smith was required by MHI to tarp the load, that would not suffice to justify a ruling in his favor. As discussed above, the parties present testimony that Smith had safer methods of tarping at his disposal (see M. R. S. St. ¶ 44; C. R. S. St. ¶ 45; C. St. ¶¶ 22-23). That evidence raises a factual issue under Camp as to whether Smith failed to guard himself from a hazard that a reasonable person in his position would have avoided -- and thus as to whether MHI could have foreseen that Smith would act as he did and risk injury. And that in turn means that genuine disputes of fact exist as to whether MHI or Mitsubishi created a foreseeable risk of injury to Smith.

## Conclusion

Smith has failed to establish the absence of any genuine disputes of fact material to the issue of duty. With the record viewed in the light most favorable to MHI, Mitsubishi and Casini, the term "loading" in the Agreement would not include tarping, so that none of the defendants owed Smith a duty to aid him with the tarp as a matter of contract. Similarly, there are sufficient

___

[8] Smith counters by pointing to a series of bills of lading that MHI issued for other shipments that mandated the use of a tarp (S. St. ¶ 25), but in this instance it was Smith's employer -- and not MHI -- that generated the bill of lading for the Machine (see M. St. ¶ 14). MHI's parts and warehouse manager testified in his deposition that MHI required that loads be tarped only if it was the shipper (M. R. S. St. ¶ 25), and MHI and Mitsubishi identify the buyer as the shipper here (M. St. ¶ 5). In any case, Smith's current motion is no place for the weighing of competing evidence.

factual disputes to prevent this Court from finding that the defendants owed Smith such a duty under the common law. Hence Smith's motion to narrow the issues under Rule 16 is denied -- but so there is no misunderstanding, that conclusion does <u>not</u> equate to a ruling in the other direction (that is, nothing said here dictates that defendants must prevail as a matter of law either).

                                                   Milton I. Shadur
Date: April 18, 2014                    Senior United States District Judge