IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KERRY SMITH and CHERYL SMITH,    )
                                 )
                    Plaintiffs,  )
                                 )
        v.                       )    Case No. 10 C 8276
                                 )
MHI INJECTION MOLDING            )
MACHINERY, INC., et al.,         )
                                 )
                    Defendants.  )

## MEMORANDUM OPINION AND ORDER

With this Court's August 19, 2015 approval of the parties' jointly submitted final pretrial order ("FPTO") having established the ground rules for the trial of this action, brought by Kerry Smith ("Smith") and his wife Cheryl[1] against remaining defendant Casini Warehousing Corporation ("Casini"), this action has become ready for trial. Casini has submitted, and Smith has responded to, Casini's motions in limine, which are thus ripe for decision.[2]

Before this opinion turns to that extended task, however, the sole undisposed-of motion in limine by Smith should be addressed. And that in turn requires some background explanation.

Whenever this Court holds the status hearing that it always schedules contemporaneously with the date on which the litigants' counsel have confirmed that discovery has been completed

---

[1] Cheryl Smith's claim is for loss of consortium resulting from the injuries her husband suffered. As her claim is dependent upon his, this opinion will speak only of Kerry Smith's claims.

[2] All citations to Casini's motions, which include statements in their support, will take the form "C. Motion --:--," with the number preceding the colon conforming to Casini's motion numbering and the number following the colon indicating the page of the motion statement. That same usage extends to Smith's submissions (cited as "S. Resp.").

and that the case will follow the remaining path to trial, this Court explains the elements that do or do not have to be included in the FPTO that is a necessary precondition to any trial. Long experience has taught that, for a number of reasons that need not be spelled out for present purposes, the best method of handling anticipated motions in limine is to have the parties include in their proposed FPTO a brief summary preview of coming attractions, rather than their then submitting fully developed motions with accompanying memoranda. In that way the conference with counsel that this Court holds very shortly after it receives their jointly proposed FPTO can be devoted in part to a brief review of which motions are contested and therefore call for briefing, coupled with setting a schedule for that purpose.

In this instance Smith included in the jointly tendered FPTO brief descriptions of seven anticipated motions in limine. Less than a month later, as a result of further discussions by the parties' counsel they submitted, and on September 17, 2015 this Court signed, their Agreed Order (Dkt. No. 130) covering all but one of Smith's motions, leaving only this Motion 4 open:

> No evidence or arguments to suggest that Kerry's failure to receive medical attention for certain injuries (knee, hip) means that those injuries were not significant, or did not arise from the December 16, 2009 accident.

Although the Agreed Order jointly submitted by the litigants' counsel and then signed by this Court, as they had requested, did not encompass that Motion 4, Casini's counsel have never objected to it, and it appears eminently sensible. Accordingly it is granted, and this opinion can proceed to deal with the Casini motions.[3]

___

[3] Just as Dkt. No. 310 memorialized the post-FPTO agreement of the parties as to all save one of Smith's FPTO-listed anticipated motions in limine, similar post-FPTO agreements resulted in orders signed by this Court as to Casini's FPTO-listed anticipated Motions 4 (see Dkt. No. 308) and 10 (see Dkt. No. 309). Those two motions are of course omitted from the ensuing discussion.

## Casini's Motion 1

Casini's Motion 1 (Dkt. No. 297) seeks to bar Smith from presenting evidence that Casini's overheard crane was used to place a tarp on the load of another driver, William Brown ("Brown"), earlier that same day. At issue are two ostensibly contradictory statements -- one by Smith and one by Brown -- as to whether Brown had received assistance in placing a tarp over his load. In his deposition Smith was asked whether, when he arrived at the warehouse and observed Brown's truck outside, the truck's load was tarped. Smith responded, "I don't believe so because I remember seeing the plywood. There was a couple other trucks that were there too" (Smith Dep. 68:7-10). That testimony, Casini argues, contradicts Brown's testimony that the crane operator had assisted him with tarping the load before he pulled the truck outside (Brown Dep. 15:21-24). Casini posits that Brown's testimony should be barred because Smith's seemingly contradictory testimony constitutes "a judicial admission."[4]

Keller v. United States, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) defines that term and its legal consequences:

> Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them.

Such admissions must be deliberate, clear and unequivocal statements made in the course of a judicial proceeding (Medcom Holding Co. v. Baxter Travenol Labs., Inc., 106 F.3d 1388, 1404 (7th Cir. 1997). As Keller, 58 F.3d at 1199 n.8 went on to say:

> When a party testifying at trial or during a deposition admits a fact which is adverse to his claim or defense, it is generally preferable to treat that testimony as solely an evidentiary admission.

---

[4] Casini also incorporates its arguments in its Motion 2, which seeks to exclude any evidence regarding industry custom and practice on the ground that it is irrelevant to establishing Casini's duty. That argument is addressed in the next section of this opinion.

Indeed, it is a real stretch to label Smith's statement as an "admission" at all.  Frankly, Casini's position really has nothing to commend it -- it would permit Smith's general recollection of his not having observed tarping already in place to trump the direct testimony of the driver who actually observed the tarping when it took place.  Moreover, Smith based his "I don't believe so. . ." answer not on any direct recollection of an uncovered load but rather on his having seen the plywood and thus presumably deducing that the plywood had not been tarped.

In short, Smith's deposition statement does not reach the level of a judicial admission, for it is neither "deliberate" nor "clear" nor "equivocal."  Casini's Motion 1 is denied.

## **Casini's Motion 2**

Casini's Motion 2 (Dkt. No. 298) seeks to bar any evidence that warehousemen assisted Brown and the driver preceding Brown in tarping their loads on the ground that evidence of custom and practice is irrelevant to establishing duty.  Smith responds that even if custom and practice is not sufficient to establish duty, it is still relevant.

At common law a duty to protect or rescue a stranger may arise "if a course of action creates a foreseeable risk of injury" (Simpkins v. CSX Transp., Inc., 2012 IL 110662, ¶ 19, 965 N.E.2d 1097).  In that respect the Illinois caselaw weighs four factors (id. at ¶ 21, 965 N.E.2d at 1098):

> (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant.

Though Casini correctly cites numerous Illinois decisions holding that custom or practice alone do not suffice to establish a duty, it does not follow that custom and practice are irrelevant.  For example, evidence tending to show that Casini tarped loads in the ordinary course is relevant

to evaluating factors (3) and (4) of the duty analysis. Moreover, as Casini Motion 2:4 conceded, custom and practice are relevant to the standard of care and thus to the question of whether Casini breached its duty (if it indeed owed one). Casini's Motion 2 is therefore denied. This opinion's later treatment of Casini Motion 5 will address the distinct question of how and through whom custom and practice evidence may be admitted.

## Casini's Motion 3

Casini's Motion 3 (Dkt. No. 299) primarily seeks to exclude all testimony by Smith's opinion witness, Larry Miller ("Miller"), or in the alternative to bar Miller from characterizing Casini as a "shipper." Total exclusion is denied summarily, for Casini did not disclose that basic challenge in the FPTO, and -- with discovery closed and a trial upcoming -- it is too late to do so now.

As for Casini's alternative request, the parties agree that Casini does not qualify as a "shipper" as the term is defined in Article 7 of the Uniform Commercial Code, 810 ILCS 5/7-102(a)(12). In his deposition Miller readily conceded that point, but he explained that he was using the term as shorthand consistent with common parlance in the trucking industry (Miller Dep. 77:16-78:1).

Casini does not suggest that such shorthand usage could cause confusion for the jury. Instead it claims that Miller's definition of "shipper" is unreliable under Fed. R. Evid. ("Rule") 702 because it is not based on any written publications. That objection is really nonsensical, for it would convert a word in common English usage (one who ships something) into a term of art having a limited and specialized Commercial Code meaning, then require a cautionary instruction that could confuse the lay jurors. Because Rule 702 provides no basis for barring Miller's wholly conventional usage, Casini's Motion 3 is denied as well.

**Casini's Motion 5**

Casini's Motion 5 (Dkt. No. 300) argues that two of Smith's witnesses -- Brown and William Craighead ("Craighead," the dispatcher for Smith's employer, Sycamore Specialized Carriers, Inc.) -- should be barred from testifying about the transportation industry's custom and practice in tarping loads. On that issue Craighead testified that "normally [the tarp is] lifted in some fashion by someone other than my driver" (Craighead Dep. 16:3-7).[5] For his part Brown responded in the affirmative to counsel's question whether it was "common for the crane operator and crane crew to assist in tarping" (Brown Dep. 20:22-21:5). Casini (re)asserts that custom and practice evidence is irrelevant and now charges further that establishing it requires impermissible opinion testimony under Rule 701 (incorrectly labeled in Casini's motion as Rule 702). Because this opinion has already ruled as to Casini's Motion 2 that custom and practice is relevant, the only issue remaining is Casini's argument under Rule 701.[6]

As an initial matter, there is no doubt that testimony regarding industry custom and practice is opinion evidence. Brown's and Craighead's testimony does not derive from their respective firsthand knowledge of the case. It is rather proffered to assist the jury in understanding the transportation industry generally, and such testimony is admissible only through an opinion witness under Rule 702 or a lay witness under Rule 701.

---

[5] Regrettably Casini did not cite by line the specific testimony it wished to bar, so that the lines cited here represent this Court's best guess.

[6] It should be noted that Casini's Motions 2 and 5, while overlapping, do not speak to the same evidence. Motion 2 targeted any evidence that warehousemen assisted Brown and the driver preceding him on the ground that industry custom and practice is irrelevant. But what took place on the actual day of the accident may have relevance beyond custom and practice. That contrasts with Motion 5, which relates to custom and practice evidence exclusively.

With neither of those witnesses having been designated as an opinion witness, their custom and practice testimony could be admitted only through Rule 701, which allows lay witnesses to offer opinion testimony only if it is:

(a)  rationally based on the witness's perception;
(b)  helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
(c)  not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Proposed testimony that shippers generally tarp large loads would have to be based on one facet of Rule 701(c), "specialized knowledge" of the trucking industry, and neither Brown nor Craighead can lay claim to that. Hence lay witnesses Brown and Craighead cannot testify as to their views of industry custom and practice,[7] and Casini's Motion 5 is granted.

## Casini's Motion 6

Casini's Motion 6 (Dkt. No. 301) asks that Smith be precluded from offering testimony as to potential future medical needs on the ground that such testimony is speculative and therefore unreliable. At issue is the testimony of Smith's doctors that while Smith may pursue fusion surgery in the future to reduce bone-on-bone pain, such surgery could carry significant risks, including the reactivation of his reflex sympathetic dystrophy ("RSD"). Casini's obvious misunderstanding (or mischaracterization) of the relevance of such testimony is fatal to its motion.

For opinion testimony to be admissible, it must be both relevant and reliable (Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993)). Casini attempts to challenge the

---

[7] As n. 6 indicates, nothing here bars Brown from testifying from his firsthand knowledge of the circumstances surrounding the accident -- but Craighead is not qualified in those terms.

reliability of such testimony by claiming that it is speculative for Smith to assert that "he will require a future surgical procedure. . . . " (C. Motion 6:1) -- but Smith makes no such assertion. Instead Smith says that his condition "<u>might</u> benefit from surgery, now or in the future, but that such surgery would be extremely risky because of the potential to re-ignite the RSD" (S. Resp. 6:3, emphasis in original). That assertion, based on his doctors' professional prognosis, is not attacked in Casini's motion,[8] and this Court has no basis for questioning its reliability.

Whether such testimony is relevant is the more germane inquiry under <u>Daubert</u>. Certainly that is not a predicate for recovering future medical expenses -- the <u>possible</u> adverse harms stemming from <u>possible</u> future surgery are too speculative to be compensable (see <u>Henderson v. Sheahan</u>, 196 F.3d 839, 848-49 (7th Cir. 1999), stating that under Illinois law plaintiffs may not recover damages for future injury unless it is reasonably certain that such injury will occur). But a jury could well determine that the dilemma posed by the doctors' professional advice has created emotional distress for which Smith is entitled to compensation. As such, because evidence of Smith's surgical outlook is neither unreliable nor irrelevant, Casini's Motion 6 is denied.

## Casini's Motion 7

Casini's Motion 7 (Dkt. No. 302) mirrors Casini's Motion 6 in proposing to bar testimony about the possible reactivation of Smith's RSD should he pursue surgery. Hence what has just been said in the immediately preceding section applies with equal force here: While the consequences of reactivation are too speculative to be compensable in themselves, the ongoing

---

[8] Casini does not challenge the qualifications of either doctor.

risk[9] of reactivation should Smith decide to pursue surgery is relevant to his pursuit of emotional distress damages. Casini's Motion 7 is therefore also denied.

**Casini's Motion 8**

Casini's Motion 8 (Dkt. No. 303) seeks to bar both Smith and one of his doctors, Steven Kitchen, from testifying about Smith's left hip pain. First a slam dunk: Because neither party has listed Dr. Kitchen as a witness in the FPTO, he may not be called to the stand, so the motion is granted in part.

As to Smith himself, Rule 701 governs whether he (obviously a lay witness) may offer testimony about the nature and cause of his hip pain. Plainly Smith may testify that he experienced pain after the accident (see, e.g., Christmas v. City of Chicago, 691 F. Supp. 2d 811, 821 (N.D. Ill. 2010), allowing lay witnesses "to testify about their own perceptions, including the physical and emotional effects of the defendants' alleged conduct"). But Smith may not testify about the cause of his hip pain. As United States v. Conn, 297 F.3d 548, 554 (7th Cir. 2002) (quotation marks omitted) has reconfirmed:

> Lay opinion testimony is admissible only to help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events.

Testimony as to the cause of a medical injury requires "specialized explanations or interpretations" that only an opinion witness may offer (id.). In sum, Smith may testify about his pain but not about what caused it. Thus Casini's Motion 8 is denied in part and granted in part.

---

[9] Casini asserts that the possibility of reactivation is speculative because "there no [sic] absolute percentage likelihood that Plaintiff's RSD will in fact reactivate. . ." (C. Motion 7:2). But uncertainty is not the problem but rather the very point: Smith need not prove the precise likelihood of reactivation in order to show that his fear of reactivation, which both doctors agree could result from surgery, has caused him emotional distress.

## Casini's Motion 9

Casini's Motion 9 (Dkt. No. 304) betrays its counsel's total misunderstanding of the fundamental difference between federal jurisprudence, in which the operative concept is the "claim for relief" (Fed. R. Civ. P. 8(a)) -- a concept that need not set out a theory of recovery or that may even advert to a wrong theory of recovery[10] -- and <u>not</u> the state law concept of "cause of action," a concept in which a theory of recovery plays an integral role. In this instance Casini seeks to bar evidence as to Smith's emotional distress on the ground that Smith's Fourth Amended Complaint does not include a count of Negligent Infliction of Emotional Distress.

That contention is analytically bankrupt -- and as if that were not enough to deep-six Motion 9 (and it clearly is), it is equally groundless if viewed in state law terms: Here is the teaching of <u>Babikian v. Mruz</u>, 2011 IL App (1st) 102579, ¶ 19, 956 N.E.2d 959, 964 as to the ability to recover emotional distress damages in tort actions under Illinois law:

> The defendant initially contends that the modified instruction was improper because damages for emotional distress may be awarded only where a cause of action for intentional or negligent infliction of emotional distress has been asserted, which the plaintiff did not do in this case. In fact, the rule in Illinois is just the opposite. Damages for emotional distress are available to prevailing plaintiffs in cases involving personal torts such as medical negligence.

In short, Casini Motion 9 joins the host of Casini's denied motions in limine.

---

[10] Unfortunately all too many practitioners on both sides of the "v." sign in federal practice appear to share the same misapprehension exhibited by Casini's counsel here. For that reason this Court has had frequent occasion to refer to two thoughtful opinions by Judge Frank Easterbrook, though decided nearly a quarter century ago (<u>NAACP v. Am. Family Mut. Ins. Co.</u>, 978 F. 2d 287, 292 (7th Cir. 1992), and <u>Bartholet v. Reishauer A.G.(Zurich)</u>, 953 F.2d 1073 (7th Cir. 1992)), as prime candidates for compulsory reading (and of course for understanding) by anyone who sets foot, or files documents, in a federal courthouse.

## Casini's Motion 11

Finally, Casini's Motion 11 (Dkt. No. 305) prays for an order "barring and dismissing the Plaintiffs [sic] claim alleging willful and wanton misconduct and punitive damages" on the ground that there is no evidence to support such relief (C. Motion 11:1). But a motion in limine is not the vehicle for seeking what amounts to a judgment as a matter of law. So Casini's Motion 11 is also denied, although if Smith really strikes out in evidentiary terms in his case in chief at the time of trial, Casini may of course bring a timely Rule 50 motion.

## Conclusion

For the reasons set forth in the requisite detail -- or where appropriate, despite a lack of detail -- in this opinion:

1. Smith's sole unresolved motion in limine, his No. 4 (which does not carry a separate Dkt. No.) is denied.

2. Among Casini's nine motions in limine not previously decided:

    (a) Its Nos. 1 (Dkt. No. 297), 2 (Dkt. No. 298), 3 (Dkt. No. 299), 6 (Dkt. No. 301), 7 (Dkt. No. 302), 9 (Dkt. No. 304), and 11 (Dkt. No. 305) are denied.

    (b) Its No. 8 (Dkt. No. 303) is denied in part and granted in part.

    (c) Its No. 5 (Dkt. No. 300) is granted.

This action is set for a status hearing at 8:45 a.m. November 19, 2015 to set a trial date.

_____
Milton I. Shadur
Senior United States District Judge

Date: November 12, 2015